**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **TERI PRITCHETT**, | ) | |
| | ) | |
| *Plaintiff,* | ) | **CIVIL ACTION NO**. |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **THE ADMINISTRATORS OF THE** | ) | |
| **TULANE EDUCATIONAL FUND** | ) | |
| **d/b/a TULANE UNIVERSITY** | ) | |
| | ) | |
| *Defendant.* | ) | <u>**JURY TRIAL DEMANDED**</u> |

<u>**COMPLAINT**</u>

**NOW INTO COURT**, Plaintiff, Teri Pritchett ("Plaintiff" or "Ms. Pritchett"), by and through undersigned counsel, hereby submits her Complaint against The Administrators of the Tulane Educational Fund d/b/a Tulane University ("Defendant" or "Tulane").

<u>**INTRODUCTION**</u>

1.

Plaintiff Teri Pritchett, by and through her attorney, brings this action against Tulane for violations of the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, violations of 42 U.S.C. § 2000e et seq., violations of 42 U.S.C. § 1981 et seq. ("Title VII"), and the Family Medical Leave Act ("FMLA") 29 U.S.C. § 2615 and 29 CFR § 825.220.

## JURISDICTION AND VENUE

2.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. § 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under (i) under any Act of Congress providing for the protection of civil rights; (ii) Title VII, and (iii) FMLA. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.

Defendant is an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

4.

This court has personal jurisdiction over Tulane. Defendant Tulane is a non-profit university doing business in Louisiana. At all times relevant, Tulane operated its business within the State of Louisiana.

5.

Defendant operates its business within the Eastern District of Louisiana. All actions and inactions by Defendant alleged herein occurred within the Eastern District of Louisiana. Venue in this district is proper for the Defendant pursuant to 28 U.S.C. §1391(b) & (c).

## PARTIES

6.

2

Plaintiff Teri Pritchett is an African American female. At all relevant times, Plaintiff has been a resident of the State of Louisiana and met the definition of an "employee" under all applicable statutes.

7.

Upon information and belief, Tulane is a university engaged in providing education in the New Orleans, Louisiana area. At all relevant times, Tulane has met the definition of an "employer" under all applicable statutes.

## FACTS

8.

Tulane is a privately owned university and employees about 4,600 individuals across the United States, including Louisiana.

9.

The Defendant operates a branch of its company at 200 Broadway Street, New Orleans, LA 70118.

10.

Plaintiff Teri Pritchett ("Plaintiff") began her employment with the Tulane on or about October 25, 2019. She consistently performed her duties in an exemplary manner and received positive recommendations for advancement.

11.

Beginning as early as 2020, Plaintiff began experiencing discriminatory and hostile treatment surrounding her work schedule and family responsibilities. When Plaintiff's husband was deployed from November 2020 to September 2021, she was compelled to work night shifts without any consideration for childcare, despite notifying command staff that she was the sole

caretaker for her young child. During this period, Plaintiff sought scheduling assistance during Hurricane Ida, but Captain Troy Williams responded dismissively, stating, "The department didn't issue you the kid, so figure it out."

12.

On or about June 2021, while Plaintiff was temporarily working day shifts for training, she requested to remain on a day shift due to childcare difficulties during her husband's deployment. Although the Deputy Chief agreed, the Chief overruled the decision and forced Plaintiff back to nights, even as white male officers with less seniority were moved to day shifts or allowed preferential scheduling. This marked the beginning of a pattern of discriminatory scheduling denials based on her sex.

13.

Around this same time in 2021, Plaintiff independently sought out a Taser Instructor certification course, obtained all necessary information, and expressed her interest in attending. Instead of selecting Plaintiff, who was previously trained in the material, Tulane chose two male officers, including one who later resigned, and one who was known to be ineffective in instruction. Plaintiff was denied the opportunity she had initiated herself.

14.

In October 2021, Plaintiff was promoted to Sergeant. Immediately afterward, she experienced additional disparate treatment. Two day-shift sergeant positions opened, and Plaintiff, who had seniority had requested both positions. The Chief instead assigned two Caucasian male sergeants, promoted after Plaintiff, to both positions, again denying Plaintiff advancement and scheduling opportunities.

15.

Between December 2021 and January 2022, Plaintiff became the subject of unreasonable and retaliatory Internal Affairs ("IA") complaints initiated by Captain Troy Williams, including complaints over "pink handcuffs," which had previously been approved by a superior, and a complaint regarding Plaintiff removing her shoes after stepping in animal waste. These trivial matters were escalated into IA investigations, unlike similar or more serious conduct by male officers, who were not disciplined.

16.

In February 2022, Plaintiff applied for the Field Training Officer (FTO) Coordinator position. Plaintiff was the only applicant and had already drafted program materials and performed many of the duties associated with the role. Despite this, Tulane awarded the position to Sergeant Miller, a white male sergeant with less experience, who admitted he had not planned to apply until a deputy chief encouraged him to do so.

17.

In late 2022, Plaintiff sought to join the Peer Support Program and attended valuable training relevant to the assignment. Despite her interest and qualifications, TUPD selected two male officers, leaving the program without any female representation.

18.

In October 2022, Plaintiff earned the top ranking on the Lieutenant promotional list. Immediately after results were released, Officer C. Collins filed an OIE complaint against Plaintiff. This complaint was retaliatory, as Plaintiff had earlier reported Collins for insubordination, leaving a crime scene, and misclassifying a suicide attempt as a medical incident conduct that compromised public safety. Rather than processing the matter through OIE, the complaint was improperly converted into a lengthy Internal Affairs ("IA") investigation,

which lasted from October 2022 until February 2023, delaying Plaintiff's promotional eligibility and pushing her from the top to the bottom of the list.

19.

When the IA concluded in February 2023, Plaintiff received a three-day suspension on an allegation of "unprofessionalism" and was reassigned to the downtown medical district. The suspension rendered Plaintiff ineligible for promotion for an entire year, further jeopardizing her career despite her qualifications and strong performance.

20.

On January 7, 2023, Plaintiff informed Tulane command staff that her husband had received orders for deployment. Plaintiff provided all available documentation and repeatedly followed up from January through April. Tulane ignored her communications and failed to inform her whether she needed to involve HR or whether accommodations would be provided. Plaintiff was ultimately forced to seek FMLA protection, which was initially denied and later approved in April 2023, though Tulane still refused to finalize scheduling accommodations until July 18, 2023.

21.

Throughout early and mid-2023, Plaintiff endured escalating harassment and discriminatory treatment by Lieutenant John Miller. Miller regularly lied about Plaintiff to Captain Porter, in violation of Tulane's truthfulness policy. Miller also refused to respond to Plaintiff's calls for assistance, misconduct for which other officers had been suspended or terminated but no action was taken against him. Miller left a TUPD vehicle running unattended, a policy violation which again faced no discipline. These incidents reflected disparate enforcement of policy and favoritism toward white male officers.

6

22.

In addition to misconduct and neglect, Miller made openly discriminatory statements, including telling Plaintiff he would treat her differently "than a white male sergeant" and asserting that she was "not a real sergeant" because she worked an 8-hour shift under her approved FMLA accommodation instead of a 12-hour shift. Miller also warned Plaintiff that she "needed to be quiet" before she "got herself in trouble," and mocked her when she said she intended to report his comments.

23.

In August 2023, Plaintiff planned a felony apprehension operation with approval from Captain C. Porter. Plaintiff waited for Miller, who arrived approximately 90 minutes late, to brief him. Miller refused to allow the operation to proceed, giving no legitimate reason and stating only "because I said so," despite adequate staffing being available.

24.

When Plaintiff asked Miller why he treated her differently than other sergeants, Miller responded with discriminatory comments, including acknowledging less favorable treatment toward her because she was not a white male sergeant, and criticizing her use of FMLA. Plaintiff informed Miller she intended to report his behavior.

25.

Before Plaintiff could report Miller's discriminatory conduct, Miller filed a retaliatory IA complaint against her on August 17, 2023. Captain Porter failed to meet with Plaintiff to hear her perspective on the complaint prior to issuing the IA, despite acknowledging that had he done so, the IA "would not have been issued."

26.

The IA was assigned again to Lt. N. Raziano, who had previously shown clear bias in IA investigations against Plaintiff and consistently found her in violation when directed by command staff. Tulane refused to assign an impartial investigator, despite knowing that none of the involved lieutenants held proper IA certification.

27.

During this time, Plaintiff reported additional concerns about harassment and retaliation by Captain Williams, including being instructed to alter findings in a citizen complaint investigation. When Plaintiff expressed concerns to supervisory officials, they failed to intervene or address misconduct.

28.

In September–October 2023, Plaintiff learned from the Deputy Chief that Tulane was preparing to terminate her and that she should "look for other employment," despite not having been given the opportunity to provide her side of the story. Plaintiff had multiple witnesses who could corroborate her version of events, but Tulane leadership ignored this evidence.

29.

Having endured years of discrimination, retaliation, hostile work environment, denial of opportunities, biased internal investigations, and impending unlawful termination, Plaintiff was forced to resign on October 10, 2023. Her resignation was not voluntary but constituted a constructive discharge due to intolerable working conditions in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 1981, and the Family and Medical Leave Act.

## CAUSES OF ACTION

### AS FOR THE FIRST CAUSE OF ACTION AGAINST DEFENDANTS FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*
### (Hostile Work Environment)

30.

Plaintiff states a cause of action for hostile work environment because of her

protected activities against the defendant as she is protected under Title VII of Civil

rights act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff repeats and re-alleges

the allegations contained in paragraphs 1-29, as if fully set forth herein.

31.

Title VII of the Civil Rights Act of 1964 prohibits employers from subjecting employees

to discrimination "with respect to [their] compensation, terms, conditions, or privileges of

employment" because of their race, sex, and protected activities, and prohibits employers from

creating or permitting a hostile or abusive working environment.

32.

Throughout Plaintiff's employment, Defendant Tulane subjected Plaintiff to severe and

pervasive harassment, discrimination, and hostility based on her sex, race, and protected conduct,

thereby creating a hostile work environment in violation of Title VII.

33.

Beginning as early as 2020, Plaintiff was treated with hostility and disregard concerning

her work schedule and childcare needs while her husband was deployed. Tulane compelled

Plaintiff to work night shifts despite knowing she was the sole caretaker of her young child.

When Plaintiff sought assistance during Hurricane Ida, Captain Troy Williams responded with

9

hostility and sexist animus, telling Plaintiff, "The department didn't issue you the kid, so figure it out." These comments and actions humiliated Plaintiff demeaned her as a working mother, and set a tone of hostility toward her gender and parental status.

34.

In June 2021, Plaintiff requested to remain on a day shift to manage childcare during her husband's deployment. Although the Deputy Chief agreed, the Chief overruled the decision and forced Plaintiff back to nights, while Caucasian male officers with less seniority were granted day shifts and preferential scheduling. This disparate and punitive scheduling was motivated by Plaintiff's sex and family responsibilities.

35.

In 2021, Plaintiff independently initiated an opportunity to attend a Taser Instructor certification course. Despite her prior experience and initiative, Tulane selected two male officers instead, denying Plaintiff a professional development opportunity and reinforcing the discriminatory climate.

36.

After being promoted to Sergeant in October 2021, Plaintiff continued to face discriminatory treatment. Although she had seniority, the Chief denied her two available day-shift sergeant positions and instead awarded them to Caucasian male sergeants who were promoted after Plaintiff. This further demonstrated Defendant's favoritism toward male officers and hostility toward Plaintiff.

37.

Between December 2021 and January 2022, Plaintiff became the subject of frivolous and retaliatory IA complaints initiated by Captain Williams concerning issues such as "pink

handcuffs" and removing her shoes after stepping in animal waste. Matters for which male officers were never disciplined. These IA complaints were humiliating, targeted, and intended to undermine Plaintiff's credibility and authority.

38.

In February 2022, Plaintiff applied for the Field Training Officer Coordinator position. Despite being the only applicant and already performing many of the duties, Tulane awarded the position to a less experienced white male sergeant, who admitted he applied only after being encouraged by a deputy chief. This discriminatory denial of advancement reflected a systemic hostility toward Plaintiff's presence and advancement within the department.

39.

In late 2022, Tulane again denied Plaintiff equal opportunity by rejecting her for the Peer Support Program, instead selecting two male officers and leaving the program with no female representation. This exclusion further contributed to an environment where Plaintiff was treated as inferior and unwelcome.

40.

In October 2022, after Plaintiff achieved the #1 ranking on the Lieutenant promotional list, a retaliatory and baseless OIE complaint was filed by Officer Collins. Defendant improperly transformed the OIE complaint into a four-month IA investigation that resulted in Plaintiff being reduced from first to last on the promotional list. This conduct was intended to humiliate, intimidate, and suppress Plaintiff's advancement.

41.

In February 2023, Defendant issued Plaintiff a three-day suspension and reassigned her to the downtown medical district, further placing her at a professional disadvantage. These actions

contributed to a pattern of unjust discipline, hostility, and efforts to force Plaintiff out of the department.

42.

In 2023, despite Plaintiff's repeated attempts to obtain scheduling accommodations related to her husband's deployment, Defendant ignored her requests for months, initially denied her FMLA leave, and delayed her scheduling accommodation until July 2023. Defendant's refusal to provide clarity or assistance caused significant stress and communicated that Plaintiff's needs as a woman and military spouse were unimportant.

43.

During early and mid-2023, Lieutenant John Miller escalated the hostility by routinely lying about Plaintiff to command staff, refusing to provide backup on calls, and violating departmental policy without consequence. Defendant's refusal to discipline Miller, while repeatedly disciplining Plaintiff, further intensified the hostile environment.

44.

Miller also made explicitly discriminatory statements to Plaintiff, including telling her he would treat her differently "than a white male sergeant," asserting that she was "not a real sergeant" because she worked an FMLA-approved 8-hour shift, mocking her for reporting discrimination, and warning her to "be quiet" before she "got herself in trouble." These comments were severe, humiliating, and constitute direct evidence of discriminatory hostility based on sex and race.

45.

In August 2023, when Plaintiff planned a felony apprehension operation, Miller arrived 90 minutes late, refused to allow the operation to proceed for no valid reason, and again treated

her with hostility and condescension. When Plaintiff questioned the disparate treatment, Miller reiterated his discriminatory animus, explicitly linking his treatment to her gender and FMLA usage.

46.

Before Plaintiff could report Miller's misconduct, Miller filed a retaliatory IA complaint against her on August 17, 2023, and the complaint was mishandled by Captain Porter and assigned to Lt. Raziano, an officer known for biased IA findings against Plaintiff. Defendant's handling of this complaint compounded the hostile environment and conveyed that Plaintiff had no protection from discriminatory targeting within the department.

47.

By September–October 2023, senior leadership informed Plaintiff that Tulane was preparing to terminate her and that she should "look for other employment," without providing her an opportunity to explain her side of events, despite knowing Plaintiff had witnesses who could corroborate her account. Defendant's actions communicated that Plaintiff's continued employment was unwelcome and unsupported.

48.

The cumulative effect of the ongoing discrimination, harassment, disparate treatment, retaliatory investigations, and efforts to undermine Plaintiff's authority and career created a workplace that was intimidating, abusive, and hostile, and which unreasonably interfered with Plaintiff's ability to perform her job.

49.

The harassment Plaintiff suffered was severe, pervasive, and occurred regularly over multiple years. It was perpetrated by supervisors including lieutenants, captains, and the Chief,

making Defendant strictly liable under Title VII.

50.

A reasonable person in Plaintiff's position would have found the working conditions intolerable, abusive, and hostile. Plaintiff in fact did find the environment intolerable, and Defendant's actions directly caused her constructive discharge on October 10, 2023.

51.

Plaintiff's requests for relief are set forth below.

### AS FOR THE SECOND CAUSE OF ACTION AGAINST DEFENDANTS FOR A VIOLATION OF 42 U.S.C. § 1981 (Hostile Work Environment)

52.

Plaintiff states a cause of action for hostile work environment because of her protected activities against the defendant as she is protected under 42 U.S.C. § 1981. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-29, as if fully set forth herein.

53.

42 U.S.C. § 1981 guarantees all persons within the jurisdiction of the United States the same right to make and enforce contracts, including the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, as enjoyed by white citizens. This statute prohibits racial discrimination and the creation of a hostile work environment in employment relationships.

54.

At all relevant times, Plaintiff was in a contractual employment relationship with Defendant, and Defendant interfered with Plaintiff's rights under § 1981 by subjecting her to

discrimination, harassment, and unequal treatment because of her race.

55.

Throughout her employment, Tulane consistently favored white male officers over Plaintiff in training, scheduling, disciplinary decisions, and promotional opportunities, while subjecting Plaintiff to heightened scrutiny and adverse treatment because she is African American.

56.

Tulane repeatedly denied Plaintiff training opportunities that were critical to career advancement. For example, although Plaintiff located and initiated a Taser Instructor certification opportunity and had prior experience, Tulane awarded the training to less qualified male officers, including a white male officer, thereby denying Plaintiff equal access to professional development afforded to white employees.

57.

After Plaintiff was promoted to Sergeant, Tulane continued its discriminatory practices by awarding two available day-shift sergeant positions to Caucasian male sergeants with less seniority, despite Plaintiff's qualifications and earlier promotion date. Plaintiff was denied these assignments because of her race.

58.

Tulane further subjected Plaintiff to disparately harsh disciplinary treatment. Between 2021 and 2023, Plaintiff was investigated through multiple Internal Affairs ("IA") complaints for trivial matters such as "pink handcuffs" and removing her shoes after stepping in animal waste, while white officers who engaged in serious violations, including insubordination and leaving departmental equipment unsecured, were not disciplined or investigated.

59.

Starting in 2022 and continuing into 2023, Plaintiff was subjected to ongoing racial harassment by Lieutenant John Miller, who made explicit racially discriminatory statements, including that he would treat Plaintiff differently "than a white male sergeant." Miller repeatedly undermined Plaintiff's authority because of her race, refused to respond to her calls for assistance, lied about her performance to command staff, and engaged in conduct intended to discredit her. Tulane failed to discipline Miller for any of these actions.

60.

After Plaintiff earned the #1 ranking on the Lieutenant promotional list in October 2022, Tulane allowed a retaliatory complaint to be converted into a months-long IA investigation that pushed Plaintiff from the top to the bottom of the promotional list. White male officers did not have their promotions obstructed or delayed in this manner.

61.

In August 2023, Miller escalated his discriminatory conduct by acknowledging that he treated Plaintiff differently because she was not a white male sergeant. Before Plaintiff could report his behavior, Miller filed a retaliatory IA complaint against her, which Tulane processed without affording Plaintiff an opportunity to present her account. The investigation was again assigned to a lieutenant known to issue biased findings against Plaintiff.

62.

Tulane leadership later informed Plaintiff that the department intended to terminate her employment, despite knowing that Plaintiff had witnesses who could corroborate her version of events. White male officers were not subjected to similar threats under comparable circumstances.

63.

Defendant's actions including racially hostile remarks, disparate discipline, denial of training and promotional opportunities, favoritism toward white male officers, and tolerance of racially motivated harassment created a severe and pervasive hostile work environment based on race that interfered with Plaintiff's ability to perform her job and undermined the contractual terms of her employment.

64.

Defendant acted intentionally, with malice and reckless indifference to Plaintiff's federally protected rights under § 1981.

65.

As a direct and proximate result of Defendant's violations of § 1981, Plaintiff suffered emotional distress, humiliation, reputational harm, loss of promotional opportunities, lost wages, and ultimately a constructive discharge on October 10, 2023.

66.

Plaintiff's requests for relief are set forth below.

### AS FOR THE THIRD CAUSE OF ACTION AGAINST DEFENDANTS FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*
(Racial Discrimination)**

67.

Plaintiff states a cause of action for racial discrimination because of her protected activities against the defendant as she is protected under Title VII of Civil rights act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-27, as if fully set forth herein.

68.

17

Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et seq.), prohibits employers from discriminating against employees with respect to compensation, terms, conditions, and privileges of employment because of their race or color.

69.

Plaintiff is African American and is therefore a member of a protected class under Title VII.

70.

Throughout her employment, Defendant subjected Plaintiff to less favorable treatment than similarly situated Caucasian employees and engaged in actions motivated, at least in part, by Plaintiff's race.

71.

Defendant repeatedly denied Plaintiff career advancement opportunities that were routinely provided to white male officers. For example, despite Plaintiff initiating and being qualified for the Taser Instructor certification course, Defendant selected white male officers for the opportunity instead of Plaintiff.

72.

Defendant continued this discriminatory pattern after Plaintiff's promotion to Sergeant by awarding two available day-shift sergeant positions to Caucasian male sergeants with less seniority, despite Plaintiff's qualifications and interest. Plaintiff was denied these assignments because of her race.

73.

Defendant also subjected Plaintiff to disparate discipline. From 2021 to 2023, Defendant initiated multiple Internal Affairs investigations against Plaintiff for trivial matters such as the color of her handcuffs and removing her shoes after stepping in waste. In contrast, white male officers who committed more serious violations including insubordination and leaving departmental vehicles unattended, were not disciplined or investigated.

74.

Beginning in 2022, Plaintiff was subjected to repeated racially hostile conduct by Lieutenant John Miller, who made explicit statements acknowledging he treated Plaintiff differently "than a white male sergeant." Miller routinely undermined Plaintiff's authority, refused to respond to her calls for assistance, and made false reports about her performance, all of which were tolerated by Defendant.

75.

When Plaintiff achieved the #1 ranking on the Lieutenant promotional list in October 2022, Defendant allowed a retaliatory complaint to be converted into an months-long Internal Affairs investigation that pushed Plaintiff to the bottom of the promotional list, an adverse action not imposed on white male officers.

76.

In August 2023, Miller escalated his discriminatory conduct and again invoked Plaintiff's race as the reason for his treatment of her. Before Plaintiff could report his conduct, Defendant processed a retaliatory Internal Affairs complaint against her without permitting Plaintiff to provide her account, further disadvantaging her due to racial bias.

77.

Defendant ultimately informed Plaintiff that the department planned to terminate her

employment; despite knowing she had witnesses who could corroborate her account. White male officers under comparable circumstances were not threatened with termination.

78.

Defendant's actions including denial of training and advancement opportunities, disparate disciplinary actions, tolerance of racially hostile remarks, and interference with Plaintiff's promotional ranking, constitute adverse employment actions taken because of Plaintiff's race in violation of Title VII.

79.

As a direct and proximate result of Defendant's racially discriminatory practices, Plaintiff suffered lost earnings, lost promotions, emotional distress, reputational harm, and ultimately a constructive discharge on October 10, 2023, when the working conditions became intolerable.

80.

Plaintiff's requests for relief are set forth below.

**AS FOR THE FOURTH CAUSE OF ACTION AGAINST
DEFENDANTS FOR A VIOLATION OF
42 U.S.C. § 1981
(Racial Discrimination)**

81.

Plaintiff states a cause of action for racial discrimination because of her protected activities against the defendant as she is protected under the 42 U.S.C. § 1981. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-27, as if fully set forth herein.

82.

42 U.S.C. § 1981 guarantees all persons within the jurisdiction of the United States the same right to make and enforce contracts, to the full and equal benefit of all laws and proceedings, and to enjoy the same terms, conditions, and privileges of employment as are

enjoyed by white citizens.

83.

Plaintiff is African American and was engaged in a contractual employment relationship with Defendant. Defendant intentionally interfered with Plaintiff's contractual rights by subjecting her to discrimination and adverse treatment because of her race, in violation of § 1981.

84.

Throughout Plaintiff's employment, Defendant treated similarly situated white male officers more favorably than Plaintiff in assignments, promotions, training opportunities, discipline, and evaluations, thereby denying Plaintiff the equal contractual rights afforded to white employees under § 1981.

85.

Defendant denied Plaintiff multiple training and advancement opportunities that were given to less qualified white officers, including the Taser Instructor certification course and day-shift sergeant assignments. Plaintiff was fully qualified for these opportunities, yet they were awarded to Caucasian male officers with less experience and lower seniority.

86.

Defendant also subjected Plaintiff to disparate discipline by initiating multiple Internal Affairs investigations against her for minor or trivial matters, while white male officers engaging in more serious policy violations were neither investigated nor disciplined. This unequal enforcement of rules constitutes intentional racial discrimination.

87.

Beginning in 2022, Plaintiff was targeted by Lieutenant John Miller, who made explicit statements reflecting racial animus, including telling Plaintiff that he treated her differently "than a white male sergeant." Miller repeatedly undermined Plaintiff's authority, fabricated allegations against her, and refused to provide assistance on calls, conduct not directed at white officers.

88.

Defendant knowingly tolerated Miller's racially discriminatory conduct and took no corrective action despite being aware of his statements and actions. Defendant's inaction ratified and perpetuated a racially hostile work environment.

89.

After Plaintiff earned the #1 ranking on the Lieutenant promotional list in October 2022, Defendant manipulated the Internal Affairs process in a manner that obstructed Plaintiff's promotion, including converting a retaliatory complaint into a long IA investigation that forced Plaintiff from first to last on the promotional list. White male officers did not experience comparable interference with their promotional opportunities.

90.

In August 2023, after Plaintiff questioned her disparate treatment, Miller again invoked race as the reason for his actions and filed a retaliatory IA complaint against her. Defendant processed the complaint without giving Plaintiff an opportunity to be heard and assigned it to an investigator known to make biased findings against Plaintiff, further interfering with Plaintiff's contractual employment rights on the basis of race.

91.

By September 2023, Defendant informed Plaintiff that they intended to terminate her employment despite knowing that witnesses could corroborate her version of events. White male

officers accused of similar or more serious misconduct were not threatened with termination.

92.

Defendant's actions including racially hostile remarks, unequal discipline, denial of opportunities, manipulation of promotional processes, and retaliation against Plaintiff for opposing race discrimination constitute intentional racial discrimination that interfered with Plaintiff's contractual rights in violation of § 1981.

93.

As a direct and proximate result of Defendant's violations of § 1981, Plaintiff suffered lost income, loss of promotion, emotional distress, reputational harm, and ultimately a constructive discharge on October 10, 2023, when continued employment became intolerable due to ongoing racial discrimination.

94.

Plaintiff's requests for relief are set forth below.

## AS FOR THE FIFTH CAUSE OF ACTION AGAINST DEFENDANTS FOR A VIOLATION OF 42 U.S.C. § 1981 (Sex Discrimination)

95.

Plaintiff states a cause of action for sex discrimination because of her protected activities against the defendant as she is protected under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e *et seq*. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-27, as if fully set forth herein.

96.

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees on the basis of sex with respect to compensation, terms, conditions, and privileges of employment.

97.

Plaintiff is female and therefore a member of a protected class under Title VII.

98.

Throughout Plaintiff's employment, Defendant subjected her to disparate treatment compared to similarly situated male employees. Defendant repeatedly granted male officers preferential assignments, training opportunities, and disciplinary leniency that were not afforded to Plaintiff.

99.

Plaintiff was denied multiple professional development opportunities because of her sex. In 2021, Plaintiff independently located a Taser Instructor certification course and expressed her interest in attending. Despite her qualifications and initiative, Tulane selected male officers, including a less qualified white male officer, while denying Plaintiff the same opportunity.

100.

Following Plaintiff's promotion to Sergeant in October 2021, two day-shift sergeant positions became available. Plaintiff, who had greater seniority and qualifications requested both positions. Instead, Tulane awarded both roles to male sergeants who were promoted after her. These actions reflected favoritism toward male officers and discriminatory denial of advancement to Plaintiff based on her sex.

101.

Plaintiff was also excluded from the Peer Support Program in late 2022, despite her relevant training and professional interest. Tulane instead selected two male officers, resulting in a program with no female representation. Plaintiff's exclusion was part of a broader pattern of sex-based marginalization.

102.

Tulane subjected Plaintiff to harsher disciplinary treatment than male officers. Plaintiff faced multiple Internal Affairs ("IA") investigations for trivial or insignificant matters, including the color of her handcuffs and removing her shoes after stepping in waste, issues for which male officers were never investigated or disciplined. Meanwhile, male officers who engaged in more serious policy violations faced no consequences.

103.

In contrast, male officers who engaged in insubordination, abandoned scenes, left vehicles running and unsecured, or filed false reports were not disciplined. Tulane's selective enforcement of rules demonstrates intentional discrimination based on Plaintiff's sex.

104.

Plaintiff also suffered discriminatory hostility from Lieutenant John Miller, who consistently undermined her authority and treated her less favorably than male sergeants. Miller's discriminatory conduct included refusing to approve operations, withholding support, and targeting Plaintiff with false statements. His conduct was tolerated by Defendant and not directed toward male sergeants.

105.

When Plaintiff achieved the #1 ranking on the Lieutenant promotional list in October 2022, Defendant allowed a complaint to be improperly escalated into a months-long IA investigation that delayed and ultimately derailed her promotion. Male officers were not subjected to such obstruction or retaliatory investigation upon attaining eligibility for promotion.

106.

Defendant further relied on Plaintiff's sex-related stereotypes in denying her opportunities, treating her family responsibilities and work-life needs as burdens or reasons to question her commitment to the department. Male officers were not subjected to such assumptions or adverse treatment.

107.

The cumulative effect of Tulane's actions including denying training and advancement opportunities, issuing unwarranted discipline, allowing sexist hostility from supervisors, and obstructing her promotional prospects constitutes discrimination "because of sex" in violation of Title VII.

108.

As a direct and proximate result of Defendant's sex discrimination, Plaintiff suffered lost wages, loss of promotional opportunities, reputational harm, emotional distress, and ultimately constructive discharge on October 10, 2023, when working conditions became intolerable.

## AS FOR THE SIXTH CAUSE OF ACTION AGAINST
## DEFENDANTS FOR A VIOLATION OF
### Title VII of the Civil rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*
### (Retaliation)

109.

Plaintiff states a cause of action for retaliation because of her protected activities against the defendant as she is protected under Title VII of the Civil Rights Act of 1964, as amended and

26

42 U.S.C. § 2000e *et seq*. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-27, as if fully set forth herein.

110.

Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et seq.), prohibits employers from retaliating against employees who oppose unlawful employment practices or participate in investigations, proceedings, or hearings related to such practices.

111.

Throughout her employment, Plaintiff engaged in protected activity under Title VII, including but not limited to:

a) reporting the misconduct and insubordination of Officer C. Collins;

b) reporting discriminatory treatment and race-based comments made by Lieutenant John Miller;

c) challenging disparate treatment in assignments, discipline, and promotions; and

d) indicating her intent to file or pursue discrimination complaints.

112.

Tulane was aware of Plaintiff's protected activity. Plaintiff made her reports directly to supervisors, including Captain C. Porter and other command staff, and expressly informed them of her intent to report discriminatory conduct.

113.

After engaging in protected activity, Plaintiff was subjected to a series of materially adverse actions designed to punish her for opposing discrimination and to deter her from continuing to report misconduct.

114.

Immediately after Plaintiff reported Officer Collins's misconduct, Collins filed a retaliatory complaint against her, which Tulane improperly escalated into a prolonged Internal Affairs ("IA") investigation lasting from October 2022 to February 2023. Tulane's handling of the investigation resulted in Plaintiff being demoted from first to last on the lieutenant promotional list, directly harming her career.

115.

Plaintiff's three-day suspension and reassignment to the downtown medical district, both occurring immediately following her protected reporting, constituted further retaliatory adverse actions. These actions also rendered her ineligible for promotion for one year.

116.

When Plaintiff reported or attempted to report Lieutenant Miller's racially discriminatory comments and behavior, Miller filed a retaliatory IA complaint against her before she could submit her own report. Tulane processed Miller's retaliatory IA complaint without meeting with Plaintiff, without allowing her to present her account, and in violation of Tulane's own investigative procedures.

117.

Tulane repeatedly assigned Plaintiff's IA investigations to Lt. N. Raziano, an investigator known for biased findings against her, while refusing to assign an impartial investigator. This intentional manipulation of the investigative process constitutes retaliation.

118.

Tulane also retaliated against Plaintiff by selectively enforcing disciplinary rules, subjecting her to repeated IA investigations for trivial or fabricated allegations, while failing to discipline white male officers who committed more serious violations. This pattern of unequal

28

discipline was undertaken after and because Plaintiff complained about discriminatory treatment.

119.

After Plaintiff continued reporting concerns of harassment and discriminatory behavior by supervisors, including Captains Williams and Porter, Tulane leadership escalated retaliation by threatening her job security. In September–October 2023, the Deputy Chief informed Plaintiff that Tulane "was preparing to terminate her" and suggested she "look for other employment," despite her having witnesses who corroborated her account.

120.

These actions delayed and manipulated investigations, loss of promotional standing, suspension, reassignment, denial of opportunities, unjustified disciplinary action, assignment to biased investigators, and threats of termination, constitute materially adverse actions because they would dissuade a reasonable employee from reporting or opposing discrimination.

121.

A causal connection exists between Plaintiff's protected activity and Tulane's adverse actions. The retaliatory conduct followed closely in time after Plaintiff's reports of discrimination and misconduct, and Tulane's decision-makers expressly acted on the basis of Plaintiff's protected activity.

122.

Defendant's retaliatory actions were intentional, willful, and taken with reckless disregard for Plaintiff's federally protected rights.

123.

As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered emotional distress, reputational harm, loss of promotions, lost income, diminished career

opportunities, and ultimately constructive discharge on October 10, 2023.

124.

Plaintiff's requests for relief are set forth below.

### AS FOR THE SEVENTH CAUSE OF ACTION AGAINST
### DEFENDANTS FOR A VIOLATION OF
### The Family Medical Leave Act
### (Retaliation)

125.

Plaintiff states a cause of action for retaliation because of her protected activities against

the defendant as she is protected under the Family and Medical Leave Act ("FMLA"), 29 U.S.C.

§ 2601 et seq. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-27, as if

fully set forth herein.

126.

Plaintiff was an eligible employee under the Family and Medical Leave Act ("FMLA"),

29 U.S.C. § 2601 et seq. Defendant is an employer subject to the requirements of the FMLA.

127.

Beginning in January 2023, Plaintiff notified Tulane command staff including the Chief,

Deputy Chief, and HR representatives that her husband had received military deployment orders.

Plaintiff provided all available documentation and repeatedly followed up regarding the need for

scheduling accommodations associated with her husband's deployment and her corresponding

family responsibilities.

128.

Plaintiff's request for leave and scheduling adjustments constituted a request for FMLA-

qualifying leave, including leave associated with qualifying exigencies arising out of a family

member's deployment under the FMLA and the Military Caregiver provisions.

129.

Despite receiving Plaintiff's documentation and repeated follow-up inquiries, Tulane ignored Plaintiff's FMLA-related communications for months, failed to advise her of her rights or responsibilities under the FMLA, and refused to provide guidance regarding whether she should involve Human Resources.

130.

Tulane initially denied Plaintiff's FMLA request, forcing Plaintiff to continue pressing for assistance until her leave was finally approved in April 2023, months after her original request.

131.

Even after approving Plaintiff's FMLA leave, Tulane refused to implement her schedule accommodation and delayed doing so until July 18, 2023, more than six months after Plaintiff first notified the department of her husband's deployment.

132.

As a result of Tulane's intentional delay and obstruction, Plaintiff was deprived of meaningful time with her husband before his deployment and forced into stressful, conflicting work obligations, causing her significant harm.

133.

After Plaintiff exercised her rights and engaged in FMLA-protected activity including requesting leave, using leave, and seeking schedule accommodations, Tulane retaliated against her through a series of materially adverse actions.

134.

Tulane's retaliatory actions included:

31

a)  Manipulating the Internal Affairs process and issuing frivolous or exaggerated IA investigations shortly after Plaintiff sought FMLA protection;

b)  Using Plaintiff's FMLA schedule as a reason to undermine her credibility and status, specifically, Lieutenant John Miller telling Plaintiff she was "not a real sergeant" because she worked an FMLA-approved shift;

c)  Blocking Plaintiff's promotional opportunities by delaying investigations, suspending her, and placing her at the bottom of the promotional list after she requested FMLA leave;

d)  Assigning biased investigators and refusing to allow Plaintiff to provide her account in retaliation for her protected leave activity;

e)  Threatening Plaintiff's job security after she exercised FMLA rights, including telling her she should "look for other employment."

135.

These actions would deter a reasonable employee from exercising their rights under the FMLA and therefore constitute materially adverse employment actions.

136.

A direct causal connection exists between Plaintiff's protected FMLA activity and the adverse actions taken by Tulane. The timing of the retaliatory conduct occurring immediately after Plaintiff's leave requests and during her FMLA-approved schedule demonstrates that Tulane's actions were motivated by retaliation.

137.

By delaying Plaintiff's leave, ignoring her requests, using her FMLA schedule against her, undermining her promotional opportunities, and subjecting her to retaliatory investigations,

Tulane interfered with and retaliated against Plaintiff for invoking her FMLA rights, in violation of 29 U.S.C. § 2615(a)(1) and (a)(2).

138.

As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered lost wages, lost promotional opportunities, emotional distress, reputational harm, and ultimately constructive discharge on October 10, 2023.

<u>ADMINISTRATIVE PROCEDURES</u>

1.

On or about July 9, 2024, the Plaintiff filed a timely Charge of Discrimination against The Administrators of the Tulane Educational Fund, alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"). (A true and accurate copy of EEOC Charge of Discrimination # 461-2024-03045, is attached hereto as "Exhibit A")

2.

On or about September 9, 2025, the EEOC issued a "Determination and Notice Of Rights" letter for her Charge of Discrimination. On or about September 16, 2025, Plaintiff received this letter. (A true and accurate copy of the EEOC "Determination and Notice of Rights" letter for EEOC Charge of Discrimination # 461-2024-03045, is attached hereto as "Exhibit B".

3.

To remedy the violations of the rights of the Plaintiff, Plaintiff requests that the Court award her the relief prayed for below.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Teri Pritchett prays for the following relief:

33

1.

That the practices of Defendant complained of herein be determined and adjudged to be in violation of the rights of Ms. Pritchett under Title VII, 42 U.S.C. § 1981, FMLA, Louisiana Revised Statute §23:631-632, and  any other cause(s) of action that can be inferred from the facts set forth herein;

2.

All damages which Ms. Pritchett has sustained as a result of Defendant's conduct, including back pay, front pay, liquidated damages, punitive damages, general and special damages for lost compensation and job benefits he would have received but for Defendant's unlawful and retaliatory conduct;

3.

An award to Plaintiff of pre-judgment interest at the highest available rate, from and after the date of service of the initial complaint in this action on all wages owed from the date such wages were earned and due;

4.

An award representing Defendant's share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

5.

Awarding Ms. Pritchett her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

6.

An award to Plaintiff of compensatory and punitive damages against Defendant,

including but not limited to damages for physical injury, emotional distress, humiliation, embarrassment, and anguish;

7.

Post-judgment interest, as provided by law; and

8.

Such other and further legal and equitable relief as may be found appropriate and may be deemed just or equitable.

**JURY DEMAND**

Ms. Pritchett demands a trial by jury of all issues do triable in this action.

Respectfully submitted this 8th day of December 2025.

Respectfully Submitted,

**THE MINIAS LAW FIRM**

/s/ Christopher Minias
Christopher Minias (#36230)
Karl White (#40991)
1615 Poydras Street
Suite 900
New Orleans, LA 70112
Phone: (504) 777-7529
Fax: (504) 556-2866
Email:  chris@miniaslaw.com
         karl@miniaslaw.com
*Attorneys for the Plaintiff*
*Teri Pritchett*

**SERVICE INFORMATION**

Plaintiff mailed this day, December 8, 2025, by USPS certified mail Notice of Lawsuit and *Request to Waive Service of a Summons*, two copies of the *Waiver of the Service of the Summons Citation and Acceptance of Service* and a stamped self-addressed envelope to Defendant's agent: Victoria D. Johnson 6823 St Charles Ave Suite 300 Gibson Hall, New Orleans, LA 70118. Plaintiff also filed with this Court an unsigned summons.

_/s/ Christopher Minias_
CHRISTOPHER MINIAS