**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TERI PRITCHETT** | *   **CIVIL ACTION NUMBER: 2:25-cv-2456** |
|    *Plaintiff,* | * |
| | *   **JUDGE LANCE M. AFRICK** |
| | * |
| **Versus** | *   **MAGISTRATE JUDGE KAREN WELLS** |
| | *   **ROBY** |
| **THE ADMINISTRATORS OF THE** | * |
| **TULANE** | * |
| **EDUCATIONAL FUND d/b/a TULANE** | * |
| **UNIVERSITY** | * |
|    *Defendant.* | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S PARTIAL

## MOTION TO DISMISS

**NOW INTO COURT**, through undersigned counsel comes Plaintiff, Teri Pritchett, who respectfully submits this Memorandum in Opposition to Defendant, The Administrators of the Tulane Educational Fund d/b/a Tulane University's ("Tulane" or "Defendant") Partial Motion to Dismiss pursuant to Rule 12(b)(6). Defendant's motion should be denied because Plaintiff's First Amended Complaint plausibly alleges timely discriminatory and retaliatory conduct, properly pleads Title VII and FMLA retaliation claims, and expressly limits pre-limitations conduct to permissible background evidence and hostile work environment allegations.

## INTRODUCTION

Defendant improperly seeks dismissal of Plaintiff's discrimination and retaliation claims by mischaracterizing the Amended Complaint and by asking the Court to prematurely resolve factual and causation issues inappropriate for Rule 12(b)(6) review. Plaintiff's Amended

1

Complaint alleges a continuous and escalating pattern of race discrimination, sex discrimination, retaliation, and hostile work environment that culminated in constructive discharge on October 10, 2023. R. Doc. 16, Plaintiff's Amended Complaint. Plaintiff specifically alleges retaliatory investigations, threats of termination, discriminatory treatment, and constructive discharge occurring within the actionable limitations period.

At the pleading stage, Plaintiff is not required to prove a prima facie case or establish the ultimate merits of her claims. Rather, Plaintiff must only plead sufficient facts to state a plausible claim for relief, and in this case, she has done so.

## <u>FACTUAL BACKGROUND</u>

Plaintiff, an African American female sergeant employed by Tulane University Police Department, alleges years of discriminatory and retaliatory treatment based on race, sex, and protected activity. Plaintiff alleges that she was denied advancement opportunities, subjected to disparate discipline, targeted through retaliatory internal affairs investigations, denied scheduling accommodations, and subjected to direct discriminatory comments by supervisory personnel. R. Doc. 16, ¶¶ 9-33.

The retaliatory sequence alleged in the Amended Complaint further supports Plaintiff's claims. In October 2022, after Plaintiff complained of discriminatory treatment and disparate treatment favoring white male officers, Collins filed a complaint against Plaintiff and an Internal Affairs investigation was initiated. *Id.* ¶ 20. In February 2023, Plaintiff received a suspension and suffered adverse effects to her promotional opportunities. *Id.* ¶ 21. In August 2023, Plaintiff reported Lieutenant Miller's discriminatory comments, and an Internal Affairs complaint was filed against her on August 17, 2023. *Id.* ¶¶ 25-27.

Among other allegations, Plaintiff alleges that Lieutenant John Miller explicitly informed

Plaintiff that he would treat her differently "than a white male sergeant" and criticized her use of FMLA-approved accommodations. *Id.* ¶¶ 26, 48-49, 148. Plaintiff further alleges that after she complained about discriminatory treatment, Defendant escalated retaliatory internal affairs proceedings and informed her during September and October 2023 that Tulane was preparing to terminate her employment and that she should seek other employment. *Id.* ¶¶ 27-30.  Plaintiff ultimately resigned on October 10, 2023 under circumstances constituting constructive discharge. *Id.* ¶¶ 30-33. Plaintiff filed her EEOC charge on July 9, 2024 and then subsequently filed the instant suit within the time prescribed. *Id.* ¶ 153.

## LAW AND ARGUMENT

### A.  Standard Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), a pleading need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." USCS Fed Rules Civ Proc R 8. The pleading does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusations." *W. Bankers Capital, Inc. v. Kirton McConkie, P.C.*, 2025 U.S. Dist. LEXIS 30113 (E.D. La. Feb. 20, 2025) citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

To survive a Rule 12(b)(6) motion, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Hardy v. 1901 Sophie Wright, LLC*, 2025 U.S. Dist. LEXIS 54704 (E.D. La. Mar. 25, 2025). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id* citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

When reviewing a Rule 12(b)(6) motion, the Court must accept well-pled factual

allegations as true and construe them in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Courts must interpret the complaint liberally in favor of the plaintiff and all facts in the complaint must be taken as true. *Id*. "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Id* citing *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242 (5th Cir. 1997).

### B.  Defendant Improperly Attempts to Impose a Heightened Pleading Standard

Defendant's motion repeatedly evaluates Plaintiff's allegations as though Plaintiff were required to establish a prima facie case of discrimination under the McDonnell Douglas burden-shifting framework, but that is not the pleading standard.

The Supreme Court has expressly held that "the prima facie case under McDonnell Douglas is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). A Title VII plaintiff need only provide a short and plain statement giving the defendant fair notice of the claim and the grounds upon which it rests. *Id*. at 512. The issue at the pleading stage "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id* at 511.

The Fifth Circuit reaffirmed this principle in *Cicalese v. Univ. of Tex. Med. Branch*, holding that district courts err when they require plaintiffs to satisfy the McDonnell Douglas framework at the Rule 12(b)(6) stage. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762 (5th Cir. 2019). Rather, a plaintiff need only plausibly allege facts supporting the ultimate elements of a discrimination claim. *Id*. at 768. Courts improperly heighten the pleading burden when they subject a complaint to the type of rigorous evidentiary analysis reserved for summary judgment. *Id*.

Defendant's motion does precisely what *Swierkiewicz* and *Cicalese* prohibit. Instead of

4

addressing whether Plaintiff plausibly alleges discrimination and retaliation, Defendant argues that Plaintiff cannot ultimately prove discriminatory motive, causation, or entitlement to relief. Those are questions for discovery and summary judgment, not Rule 12(b)(6).

### C.  Plaintiff Alleges Specific Facts Supporting an Inference of Discriminatory Motive

Plaintiff's allegations are particularly compelling because they include direct discriminatory statements made by a supervisory official. Plaintiff alleges that Lieutenant Miller expressly stated that he would treat Plaintiff differently than a white male sergeant and repeatedly criticized Plaintiff's use of approved FMLA accommodations. R. Doc. 16, ¶¶ 48-49, 148.

Unlike cases relying solely upon inference, Plaintiff alleges explicit statements connecting adverse treatment to her protected status and protected conduct. The Fifth Circuit recognizes that discriminatory motive may be established through either direct or circumstantial evidence. *Cicalese*, 924 F.3d at 767. At the pleading stage, these allegations alone support a plausible inference that discriminatory and retaliatory motives contributed to Defendant's actions. Defendant's attempt to dismiss these allegations as insufficient improperly asks the Court to weigh evidence and draw inferences against Plaintiff.

In *Raj v. Louisiana State University*, 714 F.3d 322 (5th Cir. 2013), the plaintiff failed to allege facts suggesting discriminatory motive and failed to plead facts indicating that the challenged employment actions were based upon race or national origin. *Id*. at 331. By contrast, in this case, Plaintiff alleges direct discriminatory statements by a supervisory lieutenant, retaliatory investigations, threats of termination, disparate treatment, and constructive discharge. R. Doc. 16 ¶¶ 26, 27-33, 48-49. Unlike *Raj*, Plaintiff also alleges a specific chronology connecting protected activity to retaliatory investigations and threats of termination. The factual allegations here are substantially more detailed and far more probative of discriminatory and retaliatory intent

than those rejected in *Raj*. Further distinguishing *Raj*, Plaintiff identifies the specific speaker (Lieutenant Miller), the specific discriminatory statement ("I would treat you differently than a white male sergeant"), the protected categories involved (race and sex), the supervisors who received the complaints, and the retaliatory actions that followed. These allegations permit a plausible inference of discriminatory and retaliatory intent.

### D.  Plaintiff Properly Pleads Timely Discrimination and Retaliatory Conduct

Defendant argues that Plaintiff's Title VII discrimination and retaliation claims should be dismissed to the extent they rely on conduct occurring before September 13, 2023. However, Defendant ignores that the Amended Complaint expressly alleges timely retaliatory and discriminatory conduct occurring within the actionable period. Specifically, Plaintiff alleges: 1) escalating retaliatory internal affairs investigations in 2023; 2) threats of termination during September and October 2023; 3) continued discriminatory and retaliatory treatment by supervisory personnel; 4) ongoing retaliatory conduct following Plaintiff's complaints of discrimination; and 5) constructive discharge on October 10, 2023. R. Doc. 16, ¶¶ 27-33, 48-49, 142, 148.

Moreover, the Fifth Circuit clarified that Title VII's discrimination provision is not limited to so-called "ultimate employment decisions." *Hamilton v. Dall. Cty.*, 79 F.4th 494 (5th Cir. 2023). Thus, Defendant's attempt to dismiss Plaintiff's allegations because some challenged actions may not independently constitute termination or demotion is inconsistent with controlling Fifth Circuit authority.

Under *Pennsylvania State Police v. Suders*, a constructive discharge occurs when working conditions become so intolerable that a reasonable person in the employee's position would feel compelled to resign. *Pa. State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). Constructive discharge is treated as the equivalent of a formal discharge for remedial

purposes and constitutes an independently actionable adverse employment action. *Green v. Brennan*, 578 U.S. 547, 555, 136 S.Ct. 1769, 1776, 195 L.Ed.2d 44, 53-54 (2016). Plaintiff's resignation on October 10, 2023 falls well within the applicable 300-day limitations period.

Taken together, these allegations easily permit a plausible inference that a reasonable employee would feel compelled to resign. Plaintiff alleges discriminatory comments from a supervisor, repeated retaliatory investigations, threats of imminent termination, undermining of her authority, and escalating hostility after engaging in protected activity. These allegations describe precisely the type of intolerable working conditions that courts routinely recognize as supporting constructive discharge claims.

At minimum, whether Plaintiff's working conditions became intolerable presents a factual question that cannot be resolved on a motion to dismiss. The retaliatory investigations, threats of termination, and escalating hostility immediately preceding Plaintiff's resignation constitute independently actionable adverse employment actions occurring within the filing period.

Plaintiff specifically alleges that Defendant escalated retaliatory investigations during 2023, threatened termination during September and October 2023, continued discriminatory and retaliatory treatment during the actionable period, and ultimately forced Plaintiff's resignation on October 10, 2023. These allegations independently support Plaintiff's timely claims. Accordingly, Defendant's request for dismissal based on timeliness should be denied.

**E.  Pre-Limitations Conduct Remains Properly Alleged as Background Evidence**

Even assuming certain discriminatory acts occurred outside the 300-day limitations period, Plaintiff expressly pleads those allegations as relevant background evidence supporting timely claims and as part of her hostile work environment allegations.

The Supreme Court expressly permits the use of prior acts as background evidence in

support of timely discrimination claims. *AMTRAK v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim."). Defendant's motion effectively asks the Court to strike factual allegations from the Complaint simply because some occurred before the limitations period. *Morgan* expressly rejects that approach. Earlier acts remain relevant background evidence supporting discriminatory intent, retaliatory motive, and the circumstances surrounding Plaintiff's constructive discharge.

Even where discrete acts themselves may be time-barred, dismissal remains inappropriate because Plaintiff does not seek recovery for those acts as independent Title VII violations. Rather, Plaintiff relies on those allegations as background evidence supporting timely discrimination, retaliation, and constructive discharge claims. See *Morgan*, 536 U.S. at 113. Moreover, Plaintiff specifically alleges timely adverse actions occurring within the filing period, including retaliatory investigations, threats of termination, and constructive discharge. R. Doc. 16, ¶¶ 27-33.

Plaintiff does not seek separate recovery under Title VII for untimely discrete acts. Rather, Plaintiff properly alleges earlier conduct to provide context for the discriminatory animus, retaliatory motive, and hostile environment culminating in her constructive discharge.

At minimum, whether particular acts are properly characterized as background evidence, hostile environment evidence, or independently actionable conduct presents factual issues not appropriate for dismissal under Rule 12(b)(6).

### F.  Plaintiff's Hostile Work Environment Claim Is Timely Under Morgan

Defendant's timeliness argument also fails because Plaintiff's hostile work environment claim is governed by a different limitations analysis than discrete discrimination claims. In *Morgan*, the Supreme Court held that hostile work environment claims involve repeated conduct

that collectively constitutes a single unlawful employment practice. 536 U.S. 101, 115-17 (2002). Unlike discrete acts such as termination, failure to promote, or suspension, a hostile work environment claim may rely upon conduct occurring outside the limitations period so long as at least one act contributing to the hostile environment occurred within the filing period. Id. at 117.

Here, Plaintiff alleges a continuing pattern of discriminatory and retaliatory conduct that extended through her resignation on October 10, 2023. Plaintiff alleges ongoing retaliatory Internal Affairs investigations, discriminatory comments by supervisory personnel, repeated disparate treatment, threats of termination during September and October 2023, and escalating hostility following her protected complaints of discrimination. R. Doc. 16, ¶¶ 26-33, 48-49, 148. These allegations are not isolated incidents but are part of the same continuing pattern of discriminatory and retaliatory conduct that Plaintiff alleges created an intolerable work environment.

Because Plaintiff alleges acts contributing to the hostile work environment within the actionable filing period, the Court may consider the entire course of conduct, including related acts occurring before September 13, 2023. *Morgan*, 536 U.S. at 117. Accordingly, dismissal of Plaintiff's hostile work environment allegations on timeliness grounds would be improper.

### G.  Plaintiff Plausibly Pleads Title VII Retaliation

To plead retaliation under Title VII, Plaintiff must plausibly allege: (1) protected activity; (2) materially adverse action; and (3) a causal connection. The Fifth Circuit has emphasized that materially adverse actions are not limited to ultimate employment decisions. Rather, the relevant question is whether the challenged conduct "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Porter v. Houma Terrebonne Housing Authority Board of Commissioners*, 810 F.3d 940, 945-46 (5th Cir. 2015).

### a.  Plaintiff Adequately Pleads Protected Activity

Tulane's assertion that Plaintiff failed to allege protected activity ignores the allegations of the Amended Complaint. Plaintiff did not merely complain about workplace unfairness. Rather, Plaintiff repeatedly complained that white male officers were treated more favorably than she was and specifically reported discriminatory conduct based upon race and sex. R. *Doc* ¶¶ 48-49.

In October 2022, Plaintiff reported Officer Collins for misconduct and insubordination. Shortly thereafter, Collins filed a retaliatory complaint against Plaintiff. *Id.* ¶¶ 20-21. This sequence forms part of the broader pattern of retaliation alleged in the Amended Complaint. Likewise, in August 2023, Plaintiff reported that Lieutenant Miller stated he would treat her differently than a white male sergeant. *Id.* ¶ 26. Plaintiff further reported that Miller's conduct constituted unlawful race and sex discrimination. Plaintiff made these complaints to supervisory personnel, including Captain Porter and command staff. *Id.* ¶¶ 27, 51, 122, 123. A complaint expressly opposing race- and sex-based differential treatment constitutes protected activity under Title VII.

These allegations are readily distinguishable from cases involving generalized workplace complaints. Plaintiff specifically identified protected-class-based disparate treatment, identified white male comparators, and reported explicit discriminatory remarks by a supervisor. Such allegations plainly constitute protected activity under Title VII.

### b. Plaintiff Adequately Pleads Materially Adverse Actions

Plaintiff alleges numerous materially adverse actions that would dissuade a reasonable employee from engaging in protected activity. First, after Plaintiff reported discriminatory treatment in October 2022, a retaliatory complaint was filed against her and escalated into a lengthy Internal Affairs investigation that ultimately moved Plaintiff from first to last on the lieutenant promotional list. R. Doc. 16 ¶ 20. Second, Plaintiff received a three-day suspension and was

10

reassigned to the downtown medical district, rendering her ineligible for promotion for an entire year. R. Doc. 16 ¶ 21. Third, after Plaintiff reported Lieutenant Miller's discriminatory comments, Miller filed another retaliatory Internal Affairs complaint against Plaintiff. R. Doc. 16 ¶ 27. Fourth, Defendant repeatedly assigned Plaintiff's investigations to Lt. Raziano despite Plaintiff's allegations of bias and Defendant's ability to assign an impartial investigator. R. Doc. 16 ¶ 28. Fifth, Defendant failed to follow its own procedures by issuing and processing Internal Affairs complaints without first obtaining Plaintiff's account of the events. R. Doc. 16 ¶ 30. Finally, during September and October 2023, Defendant informed Plaintiff that termination was being contemplated and advised her to seek other employment. R. Doc. 16 ¶ 31. The cumulative effect of these actions ultimately resulted in Plaintiff's constructive discharge on October 10, 2023. R. Doc. 16 ¶¶ 30-33.

These actions far exceed the standard established by Burlington Northern and would unquestionably dissuade a reasonable employee from reporting discrimination.

### c.  Plaintiff Adequately Pleads Causation

Plaintiff's allegations support a plausible inference of retaliation through temporal proximity, decision-maker knowledge, procedural irregularities, and a pattern of escalating retaliatory conduct.

First, Plaintiff alleges immediate temporal proximity. After Plaintiff reported Collins' misconduct and disparate treatment, Collins filed a complaint against her. Likewise, after Plaintiff reported Miller's discriminatory conduct, Miller filed an Internal Affairs complaint against Plaintiff within days. R. Doc. 16 ¶ 20. Second, Plaintiff alleges that decision-makers possessed actual knowledge of her protected activity because she reported discrimination directly to supervisory personnel and command staff. R. Doc. 16 ¶ 29. Third, Plaintiff alleges an escalating

sequence of retaliation that progressed from complaints, to investigations, to suspension, to reassignment, to threats of termination, and ultimately constructive discharge. R. Doc. 16 ¶¶ 20-33. Fourth, the subjects of Plaintiff's complaints themselves initiated complaints against Plaintiff, strongly supporting an inference of retaliatory motive. R. Doc. 16 ¶ 27. Fifth, Plaintiff alleges procedural irregularities, including Defendant's failure to hear Plaintiff's account before initiating investigations and Defendant's repeated assignment of allegedly biased investigators. R. Doc. 16 ¶¶ 31-33.

Taken together, these allegations plausibly establish causation and easily satisfy Rule 8's pleading requirements.

### H. Plaintiff Plausibly Pleads FMLA Retaliation

To establish FMLA retaliation, a plaintiff must show that she availed herself of a protected FMLA right, she was adversely affected by an employment decision, and there was a causal connection between her protected conduct and the adverse employment action. *Ion v. Chevron USA, Inc.*, 731 F.3d 379 (5th Cir. 2013).

Plaintiff also plausibly alleges FMLA retaliation. Further, Tulane's characterization of the protected activity as a single January 2023 request misrepresents the nature of Plaintiff's FMLA-protected conduct. The pleaded facts establish that protected activity was not confined to one moment but rather constituted continuing conduct spanning multiple months.

Plaintiff's protected activity began on January 7, 2023, when she notified command staff of her spouse's deployment and sought scheduling accommodations. R. Doc. 16, ¶ 22. However, this initial request was not an isolated event. Plaintiff engaged in repeated follow-ups from January through April 2023, demonstrating ongoing assertion of her FMLA rights. *Id*. ¶ 47. The FMLA request was initially denied, then approved in April 2023. *Id*.

12

Plaintiff specifically alleges that Lieutenant Miller criticized her because she worked an "8-hour shift under her approved FMLA accommodation" rather than a 12-hour shift and treated her differently because of her FMLA usage. R. Doc. 16, ¶¶ 48-49.

Here, Plaintiff's protected activity was ongoing and continued through the implementation and use of her approved FMLA accommodation. Measured from Plaintiff's continuing exercise of her FMLA rights through July 2023, the August 2023 investigations and September-October 2023 threats of termination occurred within a sufficiently close temporal proximity to support a plausible inference of causation at the pleading stage.. Courts have found that periods of two and one-half months, two months, and six and one-half weeks are close enough to show a causal connection. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571 (5th Cir. 2020). This temporal proximity is sufficient to support an inference of causation at the pleading stage. These allegations plausibly support an inference that Defendant retaliated against Plaintiff for engaging in protected FMLA activity.

## CONCLUSION

Plaintiff's First Amended Complaint adequately alleges timely discriminatory and retaliatory conduct, plausibly pleads Title VII and FMLA retaliation claims, and properly alleges prior conduct as background evidence and part of an ongoing hostile work environment. Throughout its motion, Defendant asks the Court to determine whether Plaintiff can ultimately prove discriminatory motive, retaliatory causation, and constructive discharge. Those are merits questions reserved for discovery and summary judgment. *Swierkiewicz* and *Cicalese* expressly prohibit dismissal based on a plaintiff's inability to plead evidentiary detail sufficient to establish a prima facie case. Plaintiff has alleged more than enough facts to permit a reasonable inference of discrimination, retaliation, hostile work environment, and constructive discharge. The motion

should therefore be denied in its entirety.

Respectfully submitted this 2nd day of June 2026.

Respectfully Submitted,

**THE MINIAS LAW FIRM**

*/s/ Karl White*
Christopher Minias (# 36230)
Karl White (#40991)
1615 Poydras Street
Suite 900
New Orleans, LA 70112
Phone: (504) 777-7529
Fax: (504) 556-2866
Email:  chris@miniaslaw.com
          karl@miniaslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record through

the Court's CM/ECF system, which will send notice of electronic filing to all registered participants, on

this 2nd day of June 2026.

*/s/ Karl White*
**KARL WHITE**

14