## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TERI PRITCHETT**                                              **CIVIL ACTION**

**VERSUS**                                                          **No. 25-2456**

**ADMINISTRATORS OF THE TULANE**                     **SECTION I**
**EDUCATIONAL FUND**

### ORDER AND REASONS

Before the Court is defendant Administrators of the Tulane Educational Fund's ("Tulane") motion[1] to partially dismiss plaintiff Teri Pritchett's ("Pritchett") claims, i.e., counts three, five, six, and seven of Pritchett's first amended complaint ("complaint"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Pritchett's complaint[2] pleads seven causes of action against Tulane, pursuant to: Title VII of the Civil Rights Act of 1964 ("Title VII"), hostile work environment (count one); 42 U.S.C. § 1981, hostile work environment (count two); Title VII, race discrimination (count three); 42 U.S.C. § 1981, race discrimination (count four); Title VII, sex discrimination (count five); Title VII, retaliation (count six); and the Family Medical Leave Act ("FMLA"), retaliation (count seven). For the following reasons, the Court denies Tulane's motion to dismiss counts three, five, six, and seven of Pritchett's complaint.

---

[1] R. Doc. No. 19.
[2] R. Doc. No. 16.

## I.    BACKGROUND

Pritchett is an African American female who was employed as a Tulane University police officer for four years, from approximately October 25, 2019, until October 10, 2023.[3]

According to Pritchett, in 2020 she began experiencing "discriminatory and hostile treatment surrounding her work schedule and family responsibilities,"[4] based on her sex.[5] From November 2020 to September 2021, while her husband was deployed and she was the "sole caretaker for her young child," Tulane allegedly required her to work night shifts and rejected her requests for scheduling assistance.[6] Pritchett alleges that Captain Troy Williams ("Williams") responded to her by saying, "[t]he department didn't issue you the kid, so figure it out."[7] Pritchett also states that even though she was granted an accommodation to switch to day shifts, in or about June 2021, "the Chief overruled the decision and forced Plaintiff back to nights, even as white male officers with less seniority were moved to day shifts or allowed preferential scheduling."[8] Similarly, in October 2021, after Pritchett was promoted to sergeant, she claims that she was denied a reassignment to openings in the day shift which were instead given to less senior "Caucasian male sergeants."[9]

---

[3] *Id.* ¶¶ 7, 9, 12.
[4] *Id.* ¶ 13.
[5] *Id.* ¶¶ 13–14.
[6] *Id.* ¶ 13.
[7] *Id.*
[8] *Id.* ¶ 14.
[9] *Id.* ¶ 16.

Additionally, Pritchett alleges that she received differential treatment with respect to other aspects of her employment. Around June 2021, she requested to attend "a Taser [i]nstructor certification course" that she "independently sought out," yet "two male officers, including one who later resigned, and one who was known to be ineffective in instruction," were selected instead.[10] In February 2022, Tulane awarded a "Field Training Officer (FTO) Coordinator position" to "a white male sergeant with less experience, who admitted he had not planned to apply until a deputy chief encouraged him to do so."[11] According to Pritchett, that decision was made despite her previously performing "many of the duties associated with the role," having "drafted program materials," and being the "only applicant" at the time.[12]

Pritchett's complaint also describes a series of Internal Affairs ("IA") actions lodged against her. She alleges that between December 2021 and January 2022, Williams submitted IA complaints that questioned her "'pink handcuffs,' which had previously been approved by a superior," and Pritchett "removing her shoes after stepping in animal waste."[13] According to Pritchett, these trivial matters "were escalated into IA investigations, unlike similar or more serious conduct by male officers, who were not disciplined."[14] Later, in October 2022, after Pritchett "earned the top ranking on the Lieutenant promotional list," Officer C. Collins ("Collins"), whom she had previously reported for "insubordination, leaving a crime scene, and

---

[10] *Id.* ¶ 15.
[11] *Id.* ¶ 18.
[12] *Id.*
[13] *Id.* ¶ 17.
[14] *Id.*

misclassifying a suicide attempt," filed an Office of Institutional Equity ("OIE")[15] complaint against her.[16] Pritchett characterizes the OIE complaint as retaliatory and claims that it was "improperly converted into a lengthy" IA investigation, "from October 2022 until February 2023, delaying [her] promotional eligibility and pushing her from the top to the bottom of the [lieutenant promotional] list."[17] The months-long IA investigation culminated in Pritchett receiving a "three-day suspension [based] on an allegation of 'unprofessionalism,'" her reassignment "to the downtown medical district," and her being ineligible for promotion for one year.[18]

Pritchett claims that also in early 2023, when her husband was once again scheduled for deployment, Tulane failed to help her facilitate a scheduling accommodation and that as a result, she "was ultimately forced to seek FMLA protection."[19] Her request "was initially denied and . . . Tulane . . . refused to finalize scheduling accommodations until July 18, 2023."[20]

Finally, beginning and throughout 2023, Pritchett alleges that she endured "escalating harassment and discriminatory treatment by Lieutenant John Miller" ("Miller"). According to Pritchett, Miller "regularly lied about her" to "Captain Porter," "refused to respond to Plaintiff's calls for assistance," and in one instance "left a TUPD vehicle running unattended." Pritchett alleges these are policy

---

[15] *See* R. Doc. No. 1-2.
[16] R. Doc. No. 16 ¶ 20.
[17] *Id.*
[18] *Id.* ¶ 21.
[19] *Id.* ¶ 22.
[20] *Id.*

4

violations for which discipline up to and including suspension or termination may be appropriate, but Miller was not disciplined at all because of Tulane's "favoritism toward white male officers."[21]

The situation with Miller escalated in August 2023, when Miller, according to Pritchett, canceled a "felony apprehension operation" she had planned with approval from Porter, after arriving at the briefing 90 minutes late. Pritchett alleges that around the same time period,[22] Miller made overtly discriminatory comments to her, including: telling her that he treated her differently "because she was not a white male sergeant";[23] "criticizing her" and "asserting that she was 'not a real sergeant' because she worked an 8-hour shift under her approved FMLA accommodation instead of a 12-hour shift";[24] "warn[ing]" that she "'needed to be quiet' before she 'got herself in trouble'";[25] and "mock[ing] her when she said she intended to report his comments."[26]

However, before Pritchett was able to report Miller's treatment of her, she claims that he "filed a retaliatory IA complaint against her on August 17, 2023."[27] Pritchett alleges that Porter did not meet with her before commencing an IA investigation and he admitted that if he had, it "would not have been issued."[28]

---

[21] *Id.* ¶ 23.
[22] *See id.* ¶¶ 25, 27, 67.
[23] *Id.* ¶ 26.
[24] *Id.* ¶¶ 24, 26.
[25] *Id.* ¶ 24.
[26] *Id.*
[27] *Id.* ¶ 27.
[28] *Id.*

According to Pritchett, the investigation was assigned to "Lt. N. Raziano, who had previously shown clear bias in IA investigations against" her, and "Tulane refused to assign an impartial investigator."[29] Pritchett states that, during this period, she reported additional concerns regarding Williams's "harassment and retaliation" against her, but supervisory officials "failed to intervene or address misconduct."[30]

Despite Pritchett allegedly possessing evidence corroborating her version of events, and not receiving an opportunity to defend herself, Tulane informed her that it was "preparing to terminate her and that she should 'look for other employment.'"[31] Rather than wait for termination, Pritchett states that she felt pressured to resign from her position with Tulane on October 10, 2023.[32] She alleges that the events leading up to her resignation—"years of discrimination, retaliation, hostile work environment, denial of opportunities, . . . biased internal investigations, . . . discriminatory and retaliatory conduct . . . [, and] intolerable working conditions"— amounted to a constructive discharge "in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 1981, and the Family and Medical Leave Act."[33]

Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination against Tulane, "on or about July 9, 2024."[34] She received

---

[29] *Id.* ¶ 28.
[30] *Id.* ¶ 29.
[31] *Id.* ¶ 30.
[32] *Id.* ¶ 31.
[33] *Id.* ¶¶ 31, 32.
[34] *Id.* ¶ 153.

her notice of right to sue "on or about September 16, 2025," and filed this lawsuit on December 8, 2025.[35]

## II.   STANDARDS OF LAW

### A.   12(b)(6) Motion to Dismiss

Pursuant to Rule 12(b)(6), a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, "plaintiffs must allege facts that support the elements of the cause of action in order to make

---

[35] *See id.* ¶ 154; R. Doc. No. 1.

out a valid claim," and the Court does "not accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (first citing *Twombly*, 550 U.S. at 555; and then quoting *Iqbal*, 556 U.S. at 678).

Furthermore, "the Court must typically limit itself to the contents of the pleadings, including attachments thereto." *Admins. of the Tulane Educ. Fund v. Biomeasure, Inc.*, No. 08-5096, 2011 WL 4352299, at *3 (E.D. La. Sept. 6, 2011) (Vance, J.) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). The Court may consider all "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[36] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). "It is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Jenkins v. Tahmahkera*, 151 F.4th 739, 747 (5th Cir. 2025) (quotations omitted). Courts may also consider documents that are a matter of public record without converting a Rule 12(b)(6) motion to a motion for summary judgment. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

"Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)) (alteration in original).

---

[36] Courts "may consider documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quotation marks and citations omitted).

### III.   ANALYSIS

Tulane moves to dismiss counts three, five, and six of Pritchett's complaint—alleging Title VII race discrimination, sex discrimination, and retaliation—as untimely pursuant to 42 U.S.C. § 2000e-5(e)(1). Tulane also moves to dismiss plaintiff's Title VII and the FMLA retaliation claims, counts six and seven, arguing that she has failed to state a claim upon which relief can be granted. For the following reasons, the Court finds that Pritchett's Title VII race and sex discrimination claims and retaliation claim are timely, and that she plausibly alleges causes of action for Title VII retaliation and FMLA retaliation.

### A.   <u>Pritchett's Title VII discrimination and retaliation claims are timely.</u>

Tulane argues that the discrete acts and adverse employment actions, which serve as the basis of Pritchett's Title VII discrimination and retaliation claims, do not satisfy Title VII's timeliness requirements, pursuant to 42 U.S.C. § 2000e–5(e)(1).

"Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Ganheart v. Brown*, No. 17-43, 2017 WL 3991182, at *2 n.1 (E.D. La. Sep. 11, 2017) (Africk, J.) (quoting *Taylor v. Books A Million*, Inc., 296 F.3d 376, 378–79 (5th Cir. 2002)). Title VII plaintiffs in Louisiana must file a charge of discrimination with the EEOC within 300 days of when the alleged discriminatory act occurred. *See* 42 U.S.C. § 2000e–5(e)(1); *see also Conner v. Louisiana Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007) (explaining

that the 300-day rule for filing an EEOC charge in deferral states applies to claims arising in Louisiana).

The discrete discriminatory acts and retaliatory adverse employment actions that Pritchett alleges for her Title VII discrimination and retaliation claims are identical. Similarly, the § 2000e–5(e)(1) timeliness requirements are unchanged regardless of whether a plaintiff alleges Title VII discrimination or retaliation. Thus, as long as one of her alleged discrete adverse actions is timely, then counts three, five, and six of Pritchett's complaint allege timely claims for Title VII race discrimination, Title VII sex discrimination, and Title VII retaliation, respectively.

Tulane asserts that Pritchett's claims in counts three, five, and six rely on discrete discriminatory acts and adverse employment actions that occurred before September 13, 2023, more than 300 days before Pritchett filed her EEOC charge on July 9, 2024.[37]

Plaintiff counters that her "escalation of disciplinary actions, threats of termination,"[38] and "constructive discharge," stemming from her resignation on October 10, 2023, amount to a timely adverse employment action which serve as the basis of her Title VII discrimination and retaliation claims.[39] Tulane does not dispute that Pritchett's EEOC charge describes her alleged constructive discharge,[40] and acknowledges that her resignation falls within the requisite 300-day period.

---

[37] R. Doc. No. 19-1, at 6–7.

[38] R. Doc. No. 16 ¶ 105.

[39] R. Doc. No. 24, at 4.

[40] *See* R. Doc. No. 1-2

10

Pritchett's constructive discharge claim is indeed timely. She alleges that her resignation amounted to a constructive discharge, which is "actionable under Title VII" as an adverse employment action. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). For a constructive discharge claim, timeliness is measured from the date of the plaintiff's resignation. *See Stone v. Louisiana Dep't of Revenue*, 590 F. App'x 332, 337–38 (5th Cir. 2014) (determining that the prescriptive period for the plaintiff to file a timely EEOC charge ended 300 days from the date of her resignation). Pritchett filed her EEOC charge on July 9, 2024, less than 300 days after her resignation on October 10, 2023.

Pritchett also alleges as additional discrete adverse employment actions: denial of career advancement opportunities, including training and promotion; denial of assignment and shift preferences; disparate discipline; "escalation of disciplinary actions"; and "threats of termination."[41] However, even assuming *arguendo* that these additional allegations would otherwise qualify as adverse employment actions, they are time-barred as independent Title VII discrimination and retaliation causes of action because Pritchett's complaint fails to allege that they occurred within 300 days of when she filed her EEOC charge.[42]

---

[41] R. Doc. No. 16 ¶¶ 77, 105, 129–131, 134.

[42] Although Pritchett alleges that Tulane told her it intended to terminate her in September 2023, she does not allege this occurred prior to September 13, 2023. Thus, the Court cannot infer that Tulane telling her this is timely with respect to establishing an adverse employment action independent from her constructive discharge.

Pritchett is not foreclosed from alleging these otherwise untimely discrete acts as part of a timely hostile work environment claim, and she does so in count one of her complaint.[43] For "a hostile work environment claim, 'as long as an employee files her complaint while at least one act which comprises the hostile work environment claim is still timely, the entire time period of the hostile environment may be considered by a court for the purpose of determining [Title VII] liability.'" *Heath v. Bd. of Supervisors for S. Univ. and Agric. and Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017) (citation modified) (quoting *Hartz v. Adm'rs of Tulane Educ. Fund*, 275 F. App'x 281, 289 (5th Cir. 2008)). However, Pritchett "cannot breathe new life into" untimely claims as independent causes of action "by simply incorporating [them] into her hostile work environment claim." *Hartz*, 275 F. App'x at 289. "'Each incident of discrimination and each retaliatory adverse employment decision' constitutes a separate actionable 'unlawful employment practice' for which administrative remedies . . . must be timely challenged and exhausted before the Court will consider that act as the basis for an independent claim." *See Ekaidi v. Bd. of Supervisors of the S. Univ. Sys.*, No. 16-7523, 2017 WL 699821, at *2 (E.D. La. Feb. 22, 2017) (Africk, J.) (citation modified) (quoting *Morgan*, 536 U.S. at 114)). Thus, although time-barred as independent claims, evidence of the untimely discrete acts may still be admissible as evidence. However, the Court need not, and will not, reach evidentiary issues in deciding the present motion.

---

[43] *Id.* ¶¶ 34–56.

12

Accordingly, with respect to her resignation and corresponding constructive discharge, counts three, five, and six of Pritchett's complaint respectively allege timely claims for Title VII race discrimination, Title VII sex discrimination, and Title VII retaliation.

### B.    Pritchett plausibly alleges Title VII retaliation.

To state a claim for Title VII retaliation, Pritchett must allege facts supporting plausible inferences that "(1) she was engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and adverse employment action." *Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023)

Tulane avers that Pritchett has failed to sufficiently plead that she engaged in protected activity, and that even if she had, she has not plausibly alleged a causal link between her protected activity and constructive discharge.[44] Pritchett counters that she has sufficiently alleged facts demonstrating that she reported incidents of race and sex discrimination to her superiors.[45] Additionally, she argues that it is plausible to infer a causal link between her reporting discriminatory activity and her ultimate resignation because of the escalating events leading to her resignation, the actions of her superiors and others at Tulane with respect to her reports of discrimination, and the "actual knowledge" the decisionmakers had with respect to her protected activity.[46]

---

[44] R. Doc. No. 19-1, at 13–14.

[45] R. Doc. No. 24, at 10.

[46] *Id*. at 11–12.

13

First, for a Title VII retaliation claim, "protected activity can consist of either: (1) 'opposing any practice made an unlawful employment practice by [Title VII]' or (2) 'making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under [Title VII].'" *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. § 2000e–3(a)) (alterations omitted and added). The first form of activity is known as the "opposition clause;" the second is known as the "participation clause." *See id.*

The opposition clause does not actually require the opposed conduct to, in fact, violate Title VII. Instead, it is "enough that [the plaintiff] reasonably believed the employment practice to be unlawful." *Id.* at 240 (citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1137–40 (5th Cir. 1981)); *see also Cuellar v. Southwest General Emergency Physicians, P.L.L.C.*, 656 F. App'x 707, 710 (5th Cir. 2016) (per curiam) ("[A] viable Title VII retaliation claim does not necessarily depend on a viable harassment or discrimination claim." (emphasis omitted)). While the reasonable belief standard is "in tension with the plain text" of the statute, *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 n.2 (5th Cir. 2013), it "remains good law." *Rite Way*, 819 F.3d at 240.

The Fifth Circuit has indicated that, in some circumstances, "[a]n informal complaint to a supervisor regarding an unlawful employment practice may satisfy the opposition" clause. *Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914–15 (5th Cir. 2008) (per curiam). However, the opposition must indicate that the plaintiff views the employment practice as discriminatory. *See Breeding v. Dep't of Interior*,

14

No. 14-948, 2015 WL 1809977, at *8 (E.D. La. Apr. 21, 2015) (Africk, J.) (finding that the opposition clause was not satisfied where the plaintiff did not explain how her opposition "implicated her protected status or how a 'reasonable employer would have understood [it] to be an expression of opposition *to unlawful discrimination* at work'" (emphasis in original) (quoting *Stewart v. RSC Equip. Rental, Inc.*, 485 F. App'x 649, 652 (5th Cir. 2012))); *see also Allen v. Envirogreen Landscape Professionals, Inc.*, 721 F. App'x 322, 326 (5th Cir. 2017) ("In a claim of protected opposition, an employee must at least have referred to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its discriminatory practices."); *Stewart*, 485 F. App'x at 652 (affirming a grant of summary judgment finding that the plaintiff failed to establish retaliation because the plaintiff's opposition to discrimination was "indistinguishable from non-race-based grumbling by an employee" and "had no racial element").

Pritchett alleges that in August 2023 she alerted Miller that she believed he treated her differently than white male sergeants.[47] According to Pritchett, Miller acknowledged that he treated her differently "because she was not a white male sergeant," "warned [her] that she 'needed to be quiet' before she 'got herself in trouble,' and mocked her when she said she intended to report" him.[48] Shortly thereafter, Pritchett informed Captain Porter of Miller's discriminatory statements

---

[47] R. Doc. No. 16 ¶¶ 24–27. Miller had the authority to cancel "a felony apprehension operation" that Pritchett had planned.

[48] *Id.*

and that Miller "treat[ed] her differently 'than a white male sergeant.'"[49] At a minimum, Pritchett alleges two instances of reporting discriminatory treatment based on her race and/or sex to two different superiors—Lieutenant Miller and Captain Porter.[50] Therefore, Pritchett has alleged that she engaged in a protected activity sufficient to survive the 12(b)(6) stage. *See DeJean v. Jefferson Par. Sheriff Off.*, No. 22-165, 2023 WL 3434986, at *3 (E.D. La. May 12, 2023) (Fallon, J.) (finding that the plaintiff's allegation that he reported alleged discrimination to multiple supervisors was sufficient to plead that he engaged in a Title VII protected activity).

Second, Tulane does not contest that Pritchett's complaint alleges an adverse employment action sufficient to satisfy the second element of Title VII retaliation.

Third, at the pleading stage, Pritchett only needs to allege sufficient facts to plausibly infer a causal connection between her protected activity and the adverse employment action, i.e., her constructive discharge. *See Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021). Contrary to Tulane's assertion,[51] Pritchett is not required to establish but-for causation at this stage. *See Blanchard v. Tulane*

---

[49] *Id*. ¶ 122.

[50] Pritchett's complaint also suggests that she informed superiors other than Porter and Miller that she intended to pursue recourse for Miller's discriminatory conduct and requested an opportunity to substantiate her claims, but Tulane did not allow her to do so. *Id*. ¶ 52. However, her allegation that in August 2023 she reported "concerns about harassment and retaliation by Captain Williams, including being instructed to alter findings in a citizen complaint investigation," does not support her retaliation claim. The misconduct she claims to have reported with respect to Captain Williams does not allege activity that is violative of Title VII. *See Saketkoo v. Tulane Univ. Sch. of Med.*, 510 F. Supp. 3d 376, 294–95 (E.D. La. 2020) (Africk, J.), *aff'd sub nom. Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990 (5th Cir. 2022).

[51] R. Doc. No. 19-1, at 14; R. Doc. No. 25, at 7–8.

*Univ.*, 636 F. Supp. 3d 642, 660 (E.D. La. 2022) ("At the motion to dismiss stage . . . '[t]he causal connection standard [for Title VII retaliation] . . . is much less stringent than the ultimate but-for cause determination in such a case.'" (quoting *Gogreve v. Downtown Dev. Dist.*, 426 F. Supp. 2d 383, 391 (E.D. La. 2006) (Africk, J.))); *see also Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571 (5th Cir. 2020) (explaining that "the but-for standard does not apply [until after] the prima facie case stage").

Pritchett alleges that, as a result of her threatening to report Miller for his discriminatory conduct, in mid-August 2023, he preemptively filed an IA grievance against her, triggering an investigation. During the same time period, in or about mid-August 2023, Pritchett informed her superior, Porter, of Miller's ongoing discrimination. Additionally, during the IA investigation, triggered by Miller's complaint and before her resignation, Pritchett requested an opportunity to substantiate her claims, but she was denied the same. She also asserts that in September 2023, Tulane informed her that she would be terminated and indicated that her "continued employment was unwelcome and unsupported."[52]

The close temporal proximity of approximately two months between her first reporting the discrimination, sometime after August 17, 2023, and the adverse employment action, i.e., her constructive discharge on October 10, 2023, is sufficient to allege causation at the pleading stage. *Cf. Brown*, 969 F.3d at 578 (explaining that the Fifth Circuit has found that, at the prima facie stage, "to establish causation by timing alone," periods of two-and-a-half months, two months, and six-and-a-half

---

[52] R. Doc. No. 16 ¶ 52.

weeks between the protected act and adverse employment action are sufficient). Thus, the Court finds that the contemporaneous nature of Pritchett reporting Miller's conduct in August 2023, the corresponding alleged threat to terminate her employment without investigating her claims in September 2023, and her ultimate resignation in October 2023, are sufficient to infer causation. *See Wright*, 990 F.3d at 434. Accordingly, Pritchett has sufficiently pleaded a claim for Title VII retaliation.

### C.    Pritchett plausibly alleges FMLA retaliation.

To establish an FMLA retaliation claim, a plaintiff must allege "that (1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 305 (5th Cir. 2021). Tulane does not challenge that Pritchett was protected pursuant to the FMLA. However, it argues that she has failed to sufficiently allege the second and third elements of FMLA retaliation—an adverse action causally related to the exercise of her FMLA rights.

Pritchett alleges that she sought an FMLA accommodation for her work schedule on or about January 7, 2023, and that her schedule accommodation went into effect on July 18, 2023.[53] She alleges that as a result of her exercising her FMLA rights, Tulane retaliated with the following adverse actions: "1) initiation of Internal

---

[53] *Id.* ¶¶ 22, 145.

18

Affairs investigations, 2) interference with promotional opportunities, 3) disparate disciplinary treatment, 4) increased scrutiny, and 5) constructive discharge."[54]

Pritchett's allegations of decreased promotional opportunities and constructive discharge are recognized forms of adverse employment actions that "'involve a discharge,' 'loss of pay,'" or "a term, condition, or privilege of employment." *See Hamilton v. Dallas Cnty.*, 79 F.4th 494, 498 (5th Cir. 2023) (quoting *Landgraf v. USI Film Prod.*, 511 U.S. 244, 254 (1994)); *Lemonia v. Westlake Mgmt. Servs., Inc.*, No. 22-30630, 2023 WL 6878915, *8 (5th Cir. Oct. 18, 2023) (recognizing retaliatory constructive discharge as a form of adverse employment action).

However, with respect to Pritchett's claims of retaliation in the form of unfair IA investigations, "disparate disciplinary treatment," and "increased scrutiny," the Court finds that she has failed to provide sufficient facts and context, or legal precedent, to support an inference that each of these events independently qualifies as an adverse employment action. *See Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918 (5th Cir. 2022) ("[A]llegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation." (alteration in original) (citation omitted)); *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 470 (5th Cir. 2021) ("[W]e have previously observed that criticism, such as a supervisor's oral threats or abusive remarks, does not rise to the level of an adverse employment action." (citation modified) (quotation omitted)); *Tate v. Louisiana Dep't of Transp. & Dev.*, No. 11-

---

[54] *Id.* ¶ 149.

1212, 2013 WL 796015, at *15 (E.D. La. Mar. 4, 2013) (Milazzo, J.) (reasoning that an employee facing increased scrutiny while on leave was insufficient to allege a retaliatory adverse employment action).

Nevertheless, these events, taken together with Pritchett's other factual allegations surrounding her resignation, may be considered as part of her retaliatory constructive discharge claim. For example, these facts may ultimately help her show that she suffered a "reduction job responsibilities," was "reassign[ed] to menial or degrading work," experienced "badgering, harassment, or humiliation" by Tulane "calculated to encourage [her] resignation," or that Tulane otherwise made her "working conditions so intolerable that [she had] no other choice but to resign." *Lemonia*, 2023 WL 6878915, *8 (explaining relevant considerations for establishing a retaliatory discharge claim on a motion for summary judgment). Regardless, the only actionable independent adverse employment actions that Pritchett alleges, with respect to her FMLA retaliation claim, are interference with promotional opportunities and constructive discharge.

Pritchett alleges that in February 2023 she was moved to the bottom of the lieutenant promotional list because of a suspension she received with respect to an ongoing IA investigation. She states that her FMLA accommodation motivated the denial of promotional opportunity, and she suggests the disciplinary action was pretextual. However, she first notified Tulane of her intent to exercise FMLA rights in January 2023, while the IA investigation originated in October 2022. She does not plead any facts to suggest an inference that her punishment or ultimate discipline

20

was motivated by her request for FMLA leave, and she does not provide any other allegations plausibly supporting a causal link between her promotional opportunities and FMLA leave. Thus, she has failed to plausibly allege that any promotional interference she suffered is causally linked to her FMLA accommodation.

Comparatively, the Court finds that Pritchett has plausibly alleged facts to support an inference of causation between her exercise of FMLA rights and her constructive discharge. First, Pritchett details a months-long struggle to obtain approval from Tulane for her FMLA accommodation. She also alleges that after she began her FMLA accommodated schedule, on July 18, 2023, she was treated differently. Shortly thereafter, in August 2023, Miller told her that treatment was, at least in part, because "she worked an FMLA-approved shift" and was "not a real sergeant."[55] Pritchett reported Miller's comments, yet in September 2023, Tulane informed her that it intended to terminate her employment, she would not receive an opportunity to present evidence of discriminatory treatment in rebuttal, and that she should seek new employment.[56] As a result, she resigned on October 10, 2023.

Miller's alleged comments and the surrounding events are sufficient to support a plausible inference that Pritchett's FMLA accommodation motivated Tulane's actions, leading to Pritchett's constructive discharge.[57] *See Moreno v. Dealer*

---

[55] *Id*. ¶ 148.

[56] *Id*. ¶¶ 130, 148.

[57] It is unclear whether Pritchett was still working an FMLA accommodated schedule at the time of her constructive discharge. If she was, the temporal proximity to her actively exercising her FMLA rights and Tulane allegedly leaving her no choice but to resign, would also support a causal link for FMLA retaliation. *See Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 305–06 (5th Cir. 2021) (finding that a temporal link

*Integrated Servs., L.L.C.*, No. 25-20470, 2026 WL 1286835, at \*5 (5th Cir. May 11, 2026) (reasoning that an employer's statements, suggesting that he preferred to retain two employees who were not taking FMLA leave over the plaintiff, supported an inference of FMLA retaliation); *see also Luebano v. Off. Depot, L.L.C.*, No. 22-50767, 2023 WL 4249268, at \*5 (5th Cir. June 29, 2023) (Luebano took her FMLA leave in June 2020 . . . In November 2020, she was essentially warned that she was being terminated. In early January 2021, it became official. Based on this alleged timeline, and in light of the fact-intensive nature of the causation question, Luebano has sufficiently alleged a causal link."). Thus, Pritchett has plausibly alleged a claim for FMLA retaliation.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Tulane's motion[58] to dismiss counts three, five, six, and seven of Pritchett's complaint is **DENIED**.

New Orleans, Louisiana, August 6, 2026.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

supported inference of retaliation because plaintiff was terminated during FMLA leave).
[58] R. Doc. No. 19.